# SUPERIOR COURT

Ida Golden, p. a.          }
       vs.             } No.59498
Lawrence A. Jaret    }

RESCRIPT.

December 3, 1924.

GREENE, J. This is an action of trespass on the case for personal injuries alleged to have been caused by the negligence of the defendant and is now heard on defendant's motion for a new trial after verdict for the plaintiff.

The plaintiff was, on January 15th, 1924, injured on Park Avenue, in the City of Woonsocket, by being run into by defendant's automobile, then and there driven by the defendant's chauffeur upon the defendant's business. Park avenue at the place of the accident is about fifty feet wide and along its center is laid the rails of a street railway. The place of the accident was between Logee street and Pine street, highways which intersect Park avenue, and from Pine street to Logee street the grade is upwards, the hill beginning near Pine street. On the day of the accident the sun set at 4:39 and the accident occurred between five minutes and fifteen minutes after 5 o'clock in the afeernoon. It was then "getting dark, sort of dark," as plaintiff testified. The street lights were lit but the plaintiff could see beyond Pine street as far as Greene street, which is a highway running into Park avenue next below Pine street, and from 350 to 400 feet from the place of the accident.

The plaintiff, who was a girl eighteen years of age, testified that she had arrived at a point in Park avenue nearly opposite her home, which is at No. 463 Park avenue, having been driven thither by some friends in a Ford coupe; that she got off the Ford car on the curb side and after the Ford car disappeared from her view, she started to cross Park avenue to her home, first looking up and down the street; and that when she reached, or immediately after she had crossed, the railway tracks, she was hit by what other witnesses testified was the defendant's car. Her testimony is not entirely certain as to how many times she looked up and down before she was hit, but she finally testified "while I was on the sidewalk I looked and when I got off the curbing I looked and saw nothing coming and heard nothing at all."

Two eye witnesses to the accident were presented by the plaintiff in the persons of Charles Conte and Barney Schwarz. Charles Conte had just

come out of a store at the corner of Park avenue and Greene street, he testified, when the automobile of the defendant passed him, going at a very high rate of speed. It was a large closed car and Conte watched it until it stopped after the accident. Conte testified that he made only a few steps forward from the store between the time the car passed him and the time of its collision with the plaintiff, and he estimated its speed as between 35 and 40 miles an hour.

Schwarz was a baker and had stopped his cart at the corner of Park avenue and Logee street for the purpose of delivering bread to his customers. He testified that he saw the plaintiff crossing the street and the automobile coming up the street. It was coming very fast and he estimated its speed as faster than 35 miles an hour.

The defendant's car, according to all the testimony, including the chauffeur's own admission, was travelling without lights, although the hour was nearly or a little after a half-hour after sunset, and according to the testimony of all the witnesses who gave evidence upon this subject, except the testimony of the chauffeur himself, the car was travelling without sounding its horn within the hearing of any of the witnesses who testified.

On behalf of the defence the defendant presented Arthur Jacques, chauffeur for the defendant, and Amor Limorges, a grocery clerk, as eye witnesses of the accident, and Arthur Lamoureux, a painter, who was standing on the sidewalk in front of the plaintiff's home, but who did not see the actual collision.

Arthur Jacques, the chauffeur, testified that he was coming up the hill at a rate between ten and 15 miles an hour and observed the plaintiff running across the street when she was 20 or 25 feet from him, and about 15 feet from the place of the

accident, and that he and the plaintiff were about equally distant from the place of the accident, both moving at about the same rate of speed. He testified further that upon seeing the plaintiff he at once applied both brakes, the foot brake and the emergency brake, which were in first class condition, and stopped his car about five feet beyond the point of the collision after running the front wheels of the car up over the curbing and up on to the sidewalk.

Amor Limorges testified that he was sitting in his wagon on Park avenue on the side of the street where the plaintiff's home is situated, about 40 feet above and facing the scene of the accident; that he saw the plaintiff come out of a house on the opposite side of the street, run down the steps and across the street; that at the same time the defendant's automobile was coming up the street between ten and 15 miles an hour a stopped seven or eight feet beyond the place of the accident with both front wheels up on the sidewalk over the curbing, about 35 feet from where he was sitting; and that while the plaintiff was crossing the street the automobile was 150 feet from where he was sitting, which would be about 110 feet from the place of the accident.

Arthur Lamoureux, a painter, standing in front of plaintiff's home, testified that he saw the plaintiff crossing the street and the defendant's automobile coming up the street but did not see the actual collision between the two, because at that moment he turned to look at his work. He testified further that he saw the Ford car stop on the opposite side of the street and saw plaintiff get out of the car and "just as soon as she was off the Ford machine the Ford went away and she started to cross," going "faster than a walk." He testified further that at the same time the defendant's automobile was coming

up the street traveling "faster than a moderate speed," and saw it stop between 20 and 25 feet beyond the place of the accident, having next day traced the marks where it skidded but did not actually measure the distance.

The stories of these witnesses for the defendant lack coherence and consistency, and while purporting to describe the same occurrences seem actually to describe entirely different events. The witnesses contradicted one another, not in immaterial details, but in essential particulars; the plaintiff reached the scene of the accident coming out of a house on the opposite side of the street, ran down the steps and across the sidewalk into the street—she came to the scene of the accident in a Ford car, got out of it and at once ran across the street; the automobile came up the street travelling at a rate between 10 and 15 miles an hour—the autmobile came up the street travelling "faster than a moderate speed;" the automobile travelled five feet after hitting the plaintiff—the automobile travelled between 20 and 25 feet after hitting the plaintiff; the automobile was 15 feet from the place of the accident when the plaintiff crossed the street—the automobile was one hundred and ten feet from the place of the accident when the plaintiff started to cross the street.

In addition to these inconsistencies and contradictions, the versions of the occurrences given by these witnesses are highly improbable; the plaintiff, who was a young lady, 18 years of age, was running across a public street, with her head down, at a speed between ten and fifteen miles an hour; the chauffeur when 15 feet from the place of the accident applied both brakes, which were in good condition, and only stopped his car, according to his own testimony, five feet beyond the place of the accident, and, according to the testimony of Lamoureux,

between 20 and 25 feet beyond the place of the accident; in other words, according to the one he travelled 20 feet and according to the other 35 or 40 feet after applying his brakes, although he was travelling at the slow speed of 10 to 15 miles an hour and up a steep grade, and notwithstanding that the speed of the car must have been greatly retarded by the curbing up and over which it passed before it stopped with both front wheels up on the sidewalk.

The defendant argues for a new trial upon the grounds that the preponderance of the evidence shows that the defendant was not negligent and that the plaintiff was guilty of contributory negligence. I do not feel that I can disturb the verdict upon either of these grounds, for in my opinion the preponderance is against the defendant upon both. Two witnesses testified directly to the excessive and unlawful speed of the defendant's automobile and this direct evidence is confirmed by the plaintiff's testimony that when she left the curb to cross the street the automobile was not within the range of her vision, which extended down the street at least three hundred and fifty feet, and that it struck her when she had crossed about two-thirds of the 50-foot street. If she walked at an ordinary gait, as she testified, the car must have been travelling more than 10 times as fast as she was walking, or if she was running the car must have been travelling even faster, in order to cover the distance of three hundred and fifty feet while the plaintiff covered probably thirty feet. The direct evidence of the excessive speed of the automobile is also confirmed by the testimony as to the travel of the car after the collision.

In my opinion the jury were amply justified in believing that the defendant's automobile was being driven at a reckless and unlawful speed; in rejecting the defendant's denial in this

regard, not only because of the improbable, inconsistent and contradictory character of the matter of that denial, but also from the manner, character and appearance of the witnesses who testified thereto ;and in concluding therefrom and from the fact that the car was being operated without lights, probably after the hour required by law for lighting automobiles that the injuries of the plaintiff resulted proximately from the defendant's negligence.

With regard to contributory negligence, the plaintiff before attempting to cross the street looked up and down. No vehicle was in sight, which traveling at a reasonable and lawful rate of speed, could possibly reach her before she completed the crossing, and thereupon she started, looking again as she left the curb. She was not bound to anticipate unlawful conduct on the part of others. She had a right to expect and, in crossing the street, to rely upon the expectation that automobiles operating on the highway would travel at a reasonable, proper and lawful rate of speed.. She can not be said to have been guilty of contributory negligence in doing what she had a manifest right to do or in failing to avoid what she had no reason to anticipate or expect.

The defendant also argues for a new trial on the ground that the amount of the verdict, which is for $7000, is excessive. The plaintiff after the collision was carried unconscious to her home and thence, on the arrival of the physician, Dr. Thomas J. McLoughlan, and by his order, taken to the Woonsocket Hospital, where she remained about two weeks. She was then taken home where she was confined to her bed for about one month. At the hospital she remained unconscious for several days, and then she began to show signs of consciousness but did not recover full consciousness until about three weeks after the accident.

Dr. McLoughlan testified that he examined the plaintiff at the hospital and found that she had sustained a fracture of the skull, of which he presented X-ray photographs, concussion of the brain and sprained back, as well as various bruises and abrasions on the face. He also testified that the plaintiff presented symptoms of hemorrhages of the brain.

The plaintiff still suffers from nervousness, terrific headaches in the back of her head, and periodical attacks of hysteria, so the plaintiff and Dr. McLoughlan testify. She also testified that since the accident she has had trouble with her nose, resulting in difficult breathing; that her eyes have been sore and her eyesight diminished; that her memory has been impaired so that she hesitates to say anything positively because she can not trust her memory. She testified that for a long time after the accident she could not remember the occurrences preceding the accident; that she had only faint ideas of what occurred; and that only within about six weeks before the trial had she succeeded in putting together these events so as to remember them as she remembers them now.

Dr. McLoughlan, who has attended her since the accident and is still attending her for the injuries incurred in the accident, testified with regard to the permanency of the plaintiff's injuries that he did not feel justified in stating positively whether or not they would be permanent; that the headaches looked like a cerebral hemorrhage and might last a long time; and that with regard to the nervous troubles it was a cast of "shut your eyes and hope."

On behalf of the defendant, Dr. Charles F. Gormley, who described himself not as a surgeon but as a medical man, testified that he examined the plaintiff the day before he gave his testimony. He found no ob-

jective symptoms of the plaintiff's injuries, but on examining on the witness stand the X-ray photos presented by Dr. McLoughlan, seemed to agree that there had been a fracture of the plaintiff's skull. With respect to the plaintiff's present pain at the base of her head, nervousness and other subjective conditions, he testified that these are "not necessarily permanent" and believed that they would be recovered from.

The verdict of $7000 under the circumstances does not seem to me to be excessive in view of the injuries suffered.

The motion for a new trial is therefore denied.

For Plaintiff: Greene, Kennedy & Greene.

For Defendant: Hinckley, Allen, Tillinghast and Phillips.